# COURT OF OYER AND TERMINER.

---•---

## The State *v.* Jackson Walker.

*Murder—Self Defense—Deadly Weapon—Malice—Proof—Verdict.*

No mere words or gestures—no matter how offensive or insulting—will justify a homicide or reduce the crime from murder to manslaughter.

Where killing by a deadly weapon is admitted, malice aforethought is presumed, and the burden of showing the contrary is on the accused, as the natural and probable consequences of an act are presumed in law to be intended by the actor. But malice is not presumed from the use of a weapon neither deadly nor dangerous in itself.

Before there can be conviction of murder there must be proof of malice, either express or implied.

To justify the use of a deadly weapon in self defense where life or limb are in imminent danger, every means of escape or retreat must first have been exhausted.

Where murder of the first degree has not been satisfactorily proven, the jury may convict of such lesser degree of homicide as may be proven.

(*New Castle, September, 21, 1887.*)

INDICTMENT for murder.

*John Biggs*, Attorney General, and *Thomas Davis*, Deputy Attorney General, for the State.

*Austin Harrington*, for the prisoner.

COMEGYS, C. J., charging the jury :

All homicides, by the law of this State, are either justifiable, excusable or felonious.

Justifiable homicides are such as are authorized by law, familiar examples of which are the execution of a prisoner by a sheriff under legal sentence, the suppression by peace officers of a riot when it cannot be put down otherwise, &c.

Excusable homicides are those not properly justifiable, but allowable under certain circumstances, for example defence of one's own person, or that of some member of his household, as wife, children, servant.

Felonious homicides, in their turn, are divided into such as are designinated as malicious, and not malicious.

Homicides that are not malicious are manslaughters; those malicious are murders.

I will take these up in the order in which I have referred to them, and endeavor to give to you, in plain language, their several distinctions from each other—except that I shall not go further into the subject of justifiable homicides, as this is not one of them. It is claimed by the prisoner's counsel to come strictly and fully within the class called homicides in self-defence.

The placing the prisoner's case upon this ground, makes it necessary that I should go into the law of murder and manslaughter, not only to distinguish one from the other and form the present defence, but also to enable you to understand the contention of the Attorney General that the case is one of murder of the first degree, as charged in the indictment. I shall also instruct you sufficiently I trust in the law of self-defence, to enable you to determine whether this is a case of that kind.

Murder is the unlawful killing by one man of another with malice aforethought. Wherever one kills another, with a wicked purpose of taking his life, or doing him some great bodily harm, it is murder, and murder of the first degree. Where, also, one in endeavoring to perpetrate some crime punishable with death, kills another, he is guilty, by our statute, of murder of the first degree. Where one in endeavoring to commit some felonious crime, kills a human being, or kills one in doing some deliberate cruel act, he is

also guilty of murder, but not murder of the first degree as our statute describes it: but is guilty of the crime of murder of the second degree under the statute. These are cases of malicious homicide: and without the ingredient of malice, there can be no murder. Now what is malice, to make a homicide murder? Malice is a state and condition of the mind or heart, which is best understood, as wickedness. Its existence in the case of a homicide is shown by the character of the act done. If there be preconceived purpose to take life, as shown by threats, lying in wait, the selection of a deadly instrument or weapon likely to produce death and use of it in pursuance of the threats, &c., it is called express malice aforethought, and murder of the first degree. Where such, or the like circumstances do not exist, and yet the wantonness of the act done, as shooting or driving into a crowd, or its wickedness, in the deliberateness and cruelty with which it is perpetrated, evince a depraved and vicious disposition, or as it is sometimes expressed *a heart regardless of social duty and fatally bent on mischief*, then there is malice implied in law, and murder of the second degree. These degrees were unknown to our law before 1852: every malicious homicide was punishable with death down to that time, now those of the second degree are punished by imprisonment for life.

Manslaughter is committed, generally, where two men fight upon a sudden affray, and, in the heat of blood, one kills the other. If the fight were originated between them with the purpose of taking life, and one were slain, it would be murder of the first degree—the mutual agreement to fight to the death if necessary would not remove such a homicide from the scope of murder if the first degree. Killing a man in a duel is murder of such degree. The contest, to avoid a higher crime than manslaughter, must have been unpremeditated and sudden, and the slaying must have been under the influence of such a degree of heat, or transport of passion as virtually to deprive the slayer of control over himself. If the jury do not find this to be the case, then they would be justified in believing that the slayer acted under the influence of pre-

conceived malice or design, and availed himself of the occasion to exercise it, and therefore find him guilty of murder of the first degree.

Self-defence, or killing another in defence of one's own person, is, mostly, where one is suddenly assailed by another without any fault on his part, and under such circumstances as to give him just and reasonable ground to believe that he is in danger of losing his life or suffering some great bodily harm, or, as oftentimes expressed to indicate the degree of such harm, enormous bodily harm. In such case the assailed need not wait for the apprehended injury by his adversary, but may take his life if necessary to protect his own person. But before he may do this, he must do all in the power of a reasonable man, similarly circumstanced, to avoid the assault of his adversary. If it be so suddenly made, and with such a weapon as is likely to produce death or such enormous bodily harm as to imperil life, and the assailed cannot escape the fury of his adversary, he may slay his enemy. But with whatever weapon the attack is made or attempted, if there are means of escape open to the assailed, he may not take the other's life until they have been tried and failed to protect. In other words, he must retreat from his assailant or pursuer as far as he can, and never until he has done this unavailingly, can he meet his opponent and slay him. This is illustrated by the familiar instance given of two men in a room and one assailing another to take his life or inflict upon him some great harm, as mentioned; in such case the assailed must retreat as far as he can—*be driven to the wall,* as we often say figuratively with respect to other pressure in life—before he takes upon himself the final remedy for protection. If life or person can be protected in any other way than by taking life, it must be done, or the homicidal act will be treated in law as a malicious, or murderous one. The law is so tender of human life that no man must take that of another man even in the exercise of what is oratorically called the *sacred* right of self-defence, unless he has no power reasonably within his reach by retreat or otherwise, to save

his own life without doing so, or protecting his own person from great and dangerous harm.

Having now given you, I hope, all necessary instruction about the law of homicide, I will turn my attention to the prayers of respective counsel in this trial. And I will take those of the Attorney General first.

(Here read it.)

To the first I answer in the affirmative—that is, that Barr's quarrel with the prisoner, has *of itself* nothing to do with the case. But I think it proper to add, that if from the circumstances deposed to by the witnesses for the defence, if you believe their testimony with respect to them, and discredit that of the State's witnesses with respect to the matter, you think a reasonable man would have been justified in believing that Mulvey was advancing upon him as an accomplice or confederate of Barr, then the case is the same as if Barr had acted alone and been where Mulvey was at the time of the fatal blow. Under such circumstances, whatever he could have done to Barr could have been done to Mulvey. I have already gone into the law far enough to point out to you that life cannot be taken, if adequate protection by retreat or otherwise can be secured otherwise.

To the *second* (here read it) I answer that no more words or gestures will reduce homicide from murder to manslaughter—no matter how offensive or insulting they may be. If such excuse only exist for the use of a deadly weapon, the law affixes the term malicious to the act, and it is murder.

To the third (here read it) I answer that it is true that the natural and probable consequences of an act, that is those that are likely to flow from it, are presumed in law to be intended by the actor; and the burden of showing the contrary is on him; and further, that where killing is admitted, it is presumed to be done with malice aforethought, if a deadly weapon be used.

With regard to the prayers of the prisoner's counsel, I answer.

As to the *first* (read it) I answer that to justify taking life by

a person assailed, it must be to protect his own, or his person from great bodily harm, and there must be no other way open to him as a reasonable man, by retreat, or otherwise to do so. In such a dilemma any weapon of defense may be used.

As to the *second* (read it) the law does not imply malice in any case where death ensues from the use of a weapon neither deadly nor dangerous in itself: but whether it be dangerous or deadly is a question for the jury upon satisfactory proof of what it was, or if such cannot be made, of the effect it produced. Of course no one can be convicted of murder without proof, express or implied, of malice.

As to the third (read it) I repeat the substance of the charge in the Talley case, upon this point of reasonable doubt: that if you, gentlemen, after a calm review of all the testimony in this case, and regarding it alone, have in your minds a reasonable doubt of the guilt of the prisoner, a doubt growing out of the testimony before you, the prisoner is entitled to the benefit of that doubt and ought to be acquitted in manner and form as he stands indicted, which is for murder of the first degree. But if you so doubt, and yet believe from the testimony before you that he is guilty either of murder of the second degree or of manslaughter, as I have defined them respectively to you, you may convict him in your discretion of that one of them, which in your judgment the facts will support you in determining.

Verdict of murder in the second degree.